BISHOP, ex rel. DURFEE, v. LINDSAY.

ELECTIONS — RE-REGISTRATION — STATUTES — AMENDMENTS — AB-
SURDITY—CONSTRUCTION OF STATUTES.
    Where an amendment to Act No. 126, Pub. Acts 1917, by
    Act No. 413, Pub. Acts 1919, provides that notice shall be
    given in August for a re-registration to be held in June,
    July, and August, a manifest absurdity, the amendatory
    act is held, without force and effect, and the original act
    in force.

Certiorari to Wayne; Marschner (Adolph F.), J. Submitted June 10, 1920. (Calendar No. 29,288.) Decided June 18, 1920.

Mandamus by Matthew H. Bishop, prosecuting attorney of Wayne county, on the relation of Edgar O. Durfee, to compel Richard Lindsay, city clerk of Detroit, to give the statutory notice of re-registration of electors. From an order denying the writ, plaintiff brings certiorari. Reversed, and writ issued.

*Matthew H. Bishop, in pro. per*

*Vincent M. Brennan,* for defendant.

PER CURIAM. In the year 1917 the legislature by Act No. 126 provided generally for the registration of electors. Chapter 4 of said act provides for re-registration, and is as follows:

"SECTION 1. In every year in which presidential electors are to be chosen, there shall be a re-registration of the qualified electors of each township and city of this State having a population of ten thousand or more, as shown by the last preceding Federal census.

"SEC. 2. If, in any township or city having a population of less than ten thousand, as shown by the last preceding Federal census, the township board or legislative body may, in its discretion, declare, by resolution passed not later than the fifteenth day of August of any year in which presidential electors are to be chosen, by a majority vote of the members-elect of such township board or legislative body, that it is desirable to have a re-registration of the qualified electors of such township or city, then in such case there shall be in said year a re-registration of the qualified electors of such township or city.

"SEC. 3. A re-registration of qualified electors, in accordance with the provisions of this chapter, shall be had in the months of September and October, and shall be completed on the third Saturday before the next general November election. All the provisions of this act relative to the registration of qualified electors shall apply with like force and effect to any such re-registration.

"SEC. 4. Whenever a re-registration is to be had in any township or city, the clerk thereof shall provide, at the expense of the township or city, as the case

may be, a new registration book for each election precinct in such township or city. Such registration book shall be opened for re-registration on the first secular day of September, and such re-registration shall be completed on the third Saturday before the next general November election. When such re-registration shall be completed, the former registration books in such township or city shall thenceforth be deemed invalid and shall not be used in any subsequent election; and no person shall vote at any election or official primary election in any such township or city, after such re-registration, whose name shall not have been registered anew under the provisions of this act relative to re-registration, or be afterwards entered, in accordance with this act, on such new registration book for the election precinct in which he resides.

"SEC. 5. In every township or city in which a re-registration of the qualified electors is to be had, the township or city clerk, as the case may be, shall give public notice that there will be a re-registration of the qualified electors of such township or city in the months of September and October, that all qualified electors must re-register in order to be entitled to vote at subsequent elections, and that the third Saturday preceding the following general November election will be the last day on which applications for registration will be received. Such notice shall also name the place or places where, and the hours during which, applications for registration may be made. Such public notice shall be given, in the month of August of the year in which such re-registration is to be had, by posting written or printed notices in at least five of the most conspicuous places in each voting precinct, and by publishing such notice in some newspaper or newspapers published in such township or city, if any newspaper be published therein, if in the discretion of the township board or legislative body of said city publication shall be considered advisable and necessary in addition to the written or printed notices posted as aforesaid, at least once in each week for two successive weeks next preceding the first day of September of the year in which such re-registration is to be had."

In 1919 the legislature passed Act No. 413, which

211—Mich.—6.

in terms amends sections 2 and 3 of chapter 4 of Act No. 126 of the Public Acts of 1917. The amendatory sections follow:

"SECTION 2. In any township or city having a population of less than ten thousand, as shown by the last preceding Federal census, the township board or legislative body may, in its discretion, declare, by resolution passed not later than the fifteenth day of May of any year in which presidential electors are to be chosen, by a majority vote of the members-elect of such township board or legislative body, that it is desirable to have a re-registration of the qualified electors of such township or city, then in such case there shall be in said year a re-registration of the qualified electors of such township or city.

"SEC. 3. A re-registration of qualified electors, in accordance with the provisions of this chapter, shall be had in the months of June, July and August, and shall be completed on the third Saturday before the next general primary election. All the provisions of this act relative to the registration of qualified electors shall apply with like force and effect to any such re-registration."

Confusion having arisen in carrying out an endeavor to effect a re-registration in this, a presidential year, under the act of 1917, as amended by the act of 1919, the prosecuting attorney of Wayne county, on the relation of Edgar O. Durfee, filed a petition in the circuit court for the county of Wayne praying for a writ of mandamus directed to Richard Lindsay, city clerk of the city of Detroit, defendant—

"commanding him to give public notice that there will be a re-registration by said boards of registration of the qualified electors of said city of Detroit on October 16, 1920, and on such other days in the months of September and October, 1920, prior to said October 16, 1920, as shall be designated by the common council of the city of Detroit, not exceeding five days in all, and further commanding said Richard Lindsay to have said registration books open for re-registration on the first secular day of September, 1920, and not

prior thereto; and further restrain said Richard Lindsay from delivering said registration books to said boards of registration for re-registration on said 12th, 13th and 14th days of August, 1920; and that he may have such other and further relief in the premises as shall be agreeable to equity and good conscience."

The learned circuit judge before whom the case was argued, after setting forth the provisions of the 1917 act and the amendatory sections of the 1919 act, denied the writ of mandamus, saying in part:

"We hence have the absurd result, if we read the exact text of the 1917 act as amended by the 1919 act, that the legislature has provided for a re-registration in the months of June, July and August, requiring that the registration books for such re-registration should be opened on the first day of September, and that the notice for such re-registration should be given in the month of August of the same year and that such notice should apprise the electors that such re-registration would be held in the months of September and October.

"It is apparent that the provisions of the act as amended cannot be literally carried out. The court, it would seem, is bound to choose between giving literal effect to obviously inconsistent and contradictory language on the one hand and to seek to apply, upon the other, the well known principle that an act of the legislature should be upheld if there is any rational way of so doing. The court is of the opinion in this instance that it should give workable effect to the obvious purpose of the legislature in enacting the 1919 act, even if such course results in a straining of the literal text of the statutes. It may be objected that this is judicial legislation and that the remedy should be left to the legislature to work out. It is the opinion of the court that the provisions contained in sections 4 and 5 of chapter 4 of the 1917 act are purely directory, pertaining as they do to matters of detail. The 1919 act should be given effect and the provisions of section 4 relative to opening the registration books, giving the notice, etc., should be complied with in substance by taking these steps a corresponding period of time in advance of the August re-registration which

the respondent in this case intends to hold. There is no reason why a full, public and adequate notice of re-registration in the months of June, July and August cannot be given. If it is given and the public are extended a free and unhindered opportunity to re-register during a period of months preceding the primary election, it would seem that the rights of qualified electors are sufficiently protected even though the contradictory language of the statutes is overridden. The city clerk should proceed, as he intends to do, to hold the re-registration in the summer months and give the notice, open the books, etc., at times, corresponding as closely as possible to the times when such step would be taken if the re-registration were to be held in September and October. If this is done, no one's substantive rights will be infringed and no one can object that the re-registration is invalid."

We find ourselves unable to agree with the conclusions reached by the learned circuit judge. Taking the act as amended, we find this anomalous situation: In section 5 it is provided that notice shall be given in the month of August for a re-registration which is to take place in September and October, and by the amendment of section 3 it is provided that said re-registration shall take place in the months of June, July and August. We have, therefore, considering the whole act as amended, an act providing for a re-registration in June, July and August, notice of which is to be given in August. This, of course, is a manifest absurdity.

We are constrained to hold that the amendatory act (Act No. 413 of the Public Acts of 1919) is without force and effect, and that the re-registration this year must be had under the provisions of the 1917 act. We are not unmindful of the fact that much confusion would be avoided if the re-registration could be completed before the primary day in presidential years. No doubt the legislature, when it again convenes, will enact a proper amendment to that end.

The writ must issue as prayed.